IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALEXANDER PHILLIPS,

                                          OPINION and ORDER

                Plaintiff,

                                         08-cv-307-bbc

       v.

INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS, LOCAL UNION 159,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Alexander Phillips, an electrician who is African-American, filed an application to become a member of defendant International Brotherhood of Electrical Workers, Local Union 159.  After plaintiff passed an examination that defendant asked him to take, he signed defendant's referral list that would give him priority in receiving jobs. When this was discovered by defendant's business manager, who referred to plaintiff as "that black guy who used to work for the state," the manager removed plaintiff's name from the list on the ground that "work was slow," something that defendant had done only once before.  Over the next two years, plaintiff continued to seek referrals from defendant, but each time he was denied, even though defendant had accepted numerous white applicants

1

into the union and found work for them over the same time period.

Plaintiff brought this lawsuit under 42 U.S.C. § 1981, contending that defendant discriminated against him because of his race when it denied him union membership and job referrals.  Defendant has moved for summary judgment, contending that its actions were not discriminatory, but were motivated by a lack of work for its members and plaintiff's lack of qualifications.  Defendant's motion is ripe for review.

Also before the court is plaintiff's motion to "strike" several declarations submitted by defendant that were not notarized or sworn in accordance with 28 U.S.C. § 1746. Unfortunately, plaintiff has not heeded the repeated admonishments by the Court of Appeals for the Seventh Circuit that motions to "strike" are not the appropriate vehicle for challenging another party's submissions.  E.g., Wiesmueller v. Kosobucki, 547 F.3d 740, 741 (7th Cir. 2008); Custom Vehicles, Inc. v. Forest River, Inc., 464 F.3d 725 (7th Cir. 2006); Redwood v. Dobson, 476 F.3d 462, 470-71 (7th Cir.2007).  "If [a party] believe[s] any of the averments in [an] affidavit [a]re inadmissible, the proper response [i]s not to move to strike the affidavits themselves, but to dispute each of the facts proposed by [the other party] that relied on those affidavits, on the ground that the proposed facts [a]re not supported by admissible evidence."  Stocker v. Kalahari Development, LLC, 2007 WL 1140246, *1 (W.D. Wis. 2007).

Plaintiff did not include any of his objections in his responses to defendant's proposed

2

findings of fact.  In fact, in his responses, he *admits* most of the facts that he appears to be challenging in his motion to strike.  Thus, it is unclear what plaintiff's actual position is with respect to each of these facts.  To make matters worse, in response to plaintiff's motion and without obtaining leave of court, defendant filed new declarations and new proposed findings of fact in an attempt to cure the deficiencies.  Dkt. ##16-17.  Although the new proposed findings of fact are similar to the original version, defendant changed more than just the citations, making it impossible to simply substitute the new for the old.  Plaintiff concluded the parade of confusion by neither objecting to the new proposed facts nor responding directly to them, but instead raising objections to some of the averments in the new declarations on the ground that the declarant was contradicting earlier testimony or did not have a proper foundation for making a particular averment.

In sum, both parties have made a mess of things.  Because they are largely talking past each other, it is nearly impossible to determine at this point where they disagree.  Further, resolving plaintiff's motion would require the court to compare the old and new proposed facts and review each new supporting affidavit to determine to what extent it is admissible and supports the proposed fact.  This type of "scouring the record" is exactly what proposed findings of fact are intended to avoid.  Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 898 (7th Cir. 2003).

I need not resolve which party is more at fault because I conclude that defendant's

3

motion for summary judgment must be denied even if I disregard plaintiff's motion to strike. Defendant has not adequately explained the differential treatment between plaintiff and the white applicants who were admitted while plaintiff's application was kept on hold.  When evidence of more favorable treatment is combined with plaintiff's evidence that defendant's reasons for denying him membership are pretextual and defendant's inability to provide a coherent explanation for its actions, it is sufficient to allow plaintiff to present his discrimination claim to a jury.

From the parties' original proposed findings of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff Alexander Phillips is an African-American male residing in Madison, Wisconsin.  Defendant is a labor organization based in Madison, Wisconsin with approximately 1,000 members who work as electricians. Defendant operates a hiring hall that refers members to area employers that have signed collective bargaining agreements with defendant.

### A.  Procedure for Union Membership

Under the union's constitution, a decision on admission "must be completed within

ninety (90) days after the application is made." (The parties are not clear in their proposed findings of fact regarding what is required to become a union member and to what extent the union membership requirements overlap with requirements for Group I membership, which is discussed below. Plaintiff says that an applicant "must either complete a four-year apprenticeship *or* have four years experience in the trade and pass the journeyman wireman exam." Plt.'s PFOF ¶3, dkt. #20. In its proposed facts, defendant says that an applicant "must . . . prove s/he has four years experience in the industry and pass a job-related test administered by Local 159." Dft.'s PFOF ¶16, dkt. #11. In addition to omitting the reference to an apprenticeship, defendant uses the word "industry" rather than "trade" despite its argument elsewhere that the word "trade" is a term of art with a particular meaning. Despite these differing accounts, neither side disputes the other's proposed fact. Because the focus of the parties' dispute is on eligibility for Group I referrals rather than simply union membership, I need not resolve this discrepancy.) Once someone is admitted to the union, he or she must pay dues and sign a book that defendant uses as the basis for referrals.

Most of defendant's members work under a collective bargaining agreement called the Inside Agreement. Under this agreement, workers are assigned to one of four groups, with members of Group I receiving priority in work referrals, members of Group II receiving second-highest priority and so on. All members of a group must be working before work is

referred down to the next group.

The collective bargaining agreement in effect when plaintiff applied defines each group as follows:

### GROUP I

All applicants for employment who have four (4) or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, have passed a Journeyman's examination given by a duly constituted Inside Construction Local Union of the IBEW, or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship Training Committee, and who have been employed in the trade for a period of at least one (1) year in the last four (4) years in the geographical area covered by the collective bargaining agreement.

### GROUP II

All applicants for employment who have four (4) or more years' experience in the trade and who have passed a Journeyman's examination given by a duly constituted Inside Construction Local Union of the IBEW, or have been certified as a Journeyman Wireman by an Inside Joint Apprenticeship and Training Committee.

### GROUP III

All applicants for employment who have two (2) or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, and who have been employed for at least six months in the last three (3) years in the geographical area covered by the collective bargaining agreement.

### GROUP IV

All applicants for employment who have worked for the trade for more than one (1) year.

B.  <u>Plaintiff's Application</u>

In spring 2004, plaintiff contacted defendant about joining the union as a Journeyman Inside Wireman.   He spoke on the telephone with Michael Killian, a business agent and organizer for defendant.  (The parties dispute whether plaintiff told Killian that he would look for documents showing that he had completed an apprenticeship program.) After this conversation, plaintiff sent Killian his résumé and several documents showing his work history.  Plaintiff's résumé indicated that he currently worked as a subcontractor for a satellite company and that he had worked as a cable technician for several companies in 1999 and 2000. His résumé also stated:

> 1976-1980   Madison Area Technical College, Madison, WI
> Electrical Apprenticeship

Plaintiff  appended a transcript from Madison Area Technical College showing his course work in three semesters' worth of classes.   Plaintiff also appended letters documenting his work as an electrician at Forest Product Laboratories in Madison, Wisconsin, from November 1988 to July 1990 and for the City of Madison from March 1994 to December 1997, and several undated W-2 wage statements showing periods of work at other employers.

After reviewing these materials, Killian searched defendant's files for verification that plaintiff had completed an electrical apprenticeship program.  When he could not locate such

proof, Killian told plaintiff he would have to qualify for membership by taking an examination instead.  Generally, applicants are not tested unless work will be available in the near future.[1]

In June 2004, plaintiff took and passed the exam.  The examining board found that plaintiff was eligible for union membership and recommended that he be granted the classification of Journeyman Inside Wireman. When plaintiff called defendant's offices on June 20, 2004 for advice on how to proceed, a secretary told plaintiff to come in to the office, pay his union dues and sign the referral book, as was common practice when an applicant passed his exam.

The following day plaintiff came into defendant's offices and paid his dues to one of the secretaries, Trish Hallman, who allowed him to sign the referral book as a Group I

---

[1] Defendant challenges plaintiff's proposed fact that applicants are not generally tested when work is not available on the ground that Susan Blue, whose testimony provided the basis for the fact, does not have "knowledge of the circumstances in which applicants are tested."  Dfts.' Resp. to Plt.'s PFOF ¶ 17, dkt. #28.  This is nonsense.  In her affidavit, Blue testified that she has been employed by defendant since 1978, that during this time she has "been responsible for collecting initiation fees and dues from both existing and new members" and that she has "become very familiar with [defendant's] referral books and the procedures followed when signing and re-signing."  Dkt. #21, ¶¶1-3.  An office staff member with such a long history with the company and who has knowledge regarding circumstances under which applicants are granted membership into the union is certainly competent to testify regarding her observations of defendant's common practices.  Although defendant is free at trial to produce its own witness to contradict Blue, it has failed to do so in support of its motion for summary judgment.

member.   At that time, either Hallman or Blue told plaintiff that there were 37 members on the book ahead of him, but that he would be called in the near future.

### C.  Plaintiff's Removal

Billy Harrelson was defendant's business manager.   Harrelson had met plaintiff several times during union organizing efforts and referred to him as "that black guy who used to work for the state."   When Harrelson discovered that plaintiff had signed the book, he asked Hallman and Blue who had let plaintiff do this.   When Hallman stated that she had, Harrelson told her that she should not have taken his money because work was slow and members were not being accepted.   During the five years that Hallman had worked for defendant, this was the only instance in which she had been told that she should not have allowed someone to sign the book because work was slow.   (The parties dispute whether Hallman violated union policy by allowing plaintiff to sign the book without receiving approval from management.)  Harrelson directed Killian to remove plaintiff's name from the book and return his money.  On one previous occasion in 2004, defendant refunded another applicant's membership fees "for lack of work."

### D.  Plaintiff's Interaction with Defendant after Revocation of Membership

After Killian removed plaintiff's name from the referral book, no one told plaintiff for

9

several weeks.  Instead, Killian investigated plaintiff's background further.  He confirmed that plaintiff had completed two and a half of the four years required to complete an apprenticeship program for a journeyman wireman.

On July 19, 2004, Killian called plaintiff and told him he was being removed from the referral list because work was slow and that he would be put on a "to hire" list.  (The parties dispute whether such a list exists.)  Killian told plaintiff that defendant's policy was not to require new members to pay dues if there was no work and advised him to call back in a week.  When plaintiff called back, Killian said that "jobs were running slow" and plaintiff should check back in a month.  The next time plaintiff called, Killian said that there was no work because of "the weather" and "gas prices."

Plaintiff continued to call Killian on a monthly basis through the spring and summer of 2005 and each time Killian told plaintiff that no work was available.  Finally, Killian told him not to call anymore.  (The parties dispute whether Killian's tone of voice was "frustrated and angry" during the last telephone conversation.)  Killian never mentioned to plaintiff that he had any concerns about plaintiff's credentials or work experience or that he believed plaintiff was unqualified for Group I referrals.

In 2006, plaintiff filed a complaint with the Madison Equal Opportunities Commission, alleging race discrimination.  On August 3, 2006, the commission found probable cause existed to support his claim.  Six days later, Killian called plaintiff and offered

10

him work; plaintiff declined the offers because by that time he had obtained a full time job elsewhere.

### E.   Other Applicants

Between June 2004, when plaintiff's name was removed from the Group I book, and August 2006, when he was offered work, defendant allowed 19 white males to join the Group I referral list as Journeymen Inside Wiremen.  These included:

- a white male who took the exam the same day as plaintiff and received work three weeks later;

- a white male who signed the book on October 4, 2004 and received work even though 44 other applicants were ahead of him;

- two white males who were admitted on January 1, 2005 and received work on January 14, 2005;

- a white male who was admitted on September 1, 2005, and received work on September 9;

- a white male who was admitted and received work on the same day in October 2005;

- a white male who was admitted and received work in October or November 2005 even though he had not yet paid his initiation fee, which was contrary

11

to union rules.

No African Americans were allowed to join the union as Journeymen Inside Wiremen from June 2004 to August 2006.  (The parties dispute whether Monica Newell, an African American woman, was allowed to join the union in January 2004.) One African American joined the union as an "Inside Unindentured" and three others joined as apprentices.  Two white males who applied for union membership before March 2004 were denied acceptance into the union until February 2007.

OPINION

Plaintiff brings his discrimination claim under 42 U.S.C. § 1981, which employs the same evidentiary framework as claims brought under Title VII.   Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1035 (7th Cir. 1998).  The only question raised by defendant's motion for summary judgment is whether plaintiff has adduced evidence from which a reasonable jury could find that defendant discriminated against him because of his race.  Fuka v. Thomson Consumer Electronics, 82 F.3d 1397, 1402 (7th Cir. 1996).  This evidence may be direct, or, as in this case, circumstantial. Troupe v. May Dept. Stores Co., 20 F.3d 734, 736 (7th Cir. 1994).  Circumstantial evidence may include (1) suspicious timing, ambiguous statements, and other "bits and pieces" from which an inference of discrimination could be drawn; (2) evidence that similarly situated employees outside the

12

plaintiff's protected group received better treatment; or (3) evidence that although plaintiff was qualified, he was passed over in favor of persons who were not African-American and that defendant's reason for the differential treatment is unworthy of belief.  Id.  In fact, "[a]ny demonstration strong enough to support judgment in the plaintiff's favor . . . will do, even if the proof does not fit into a set of pigeonholes."  Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir.1996).  Plaintiff has adduced evidence with respect to each of the categories of circumstantial evidence identified in Troupe.


A. More Favorable Treatment for Similarly Situated Non-African American Applicants

It is undisputed that 19 white males were permitted to join Group I during the time that defendant was denying membership to plaintiff. This evidence alone would likely be enough to get plaintiff to trial.  After all, the essential principle of anti-discrimination law is that "all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  A reasonable jury could infer that defendant discriminated against plaintiff because of his race when it told him, a black applicant, that no work was to be had while at the same time it accepted numerous new white members and found work for them.

Defendant argues that the 19 white males were *not* similarly situated to plaintiff for two reasons, but a jury would not be required to accept either of its explanations.  Its first

13

unsuccessful argument is that the other candidates qualified for membership, but plaintiff did not.  Although the parties leave some ambiguity in their proposed findings of fact regarding the particular requirements for getting into the union and the Group I referral list, it is undisputed that one way of qualifying is by having four years of experience in the trade and passing an examination.  It is also undisputed that plaintiff passed the exam and had at least four years of experience as an electrician.

Defendant says that experience "in the trade" is limited to work "under a [collective bargaining agreement] to which an IBEW Local Union is a party." Dkt. #16-5, ¶4.  However, defendant does not cite any portion of the collective bargaining agreement that defines relevant experience in this way.  In fact, defendant points to *no* authority for its definition except Killian's declaration, in which he says only that the term "is defined" that way without explaining where this definition comes from.  Id.

Even if the meaning of "in the trade" was as limited as defendant says, defendant adduces no evidence that plaintiff would not have enough experience to qualify.  It says that plaintiff has "conceded" that he did not have the necessary experience, but the deposition testimony it cites includes no such concession.  Dft.'s Br. at 10, dkt. #10; Dft's PFOF ¶ 42, dkt. #11, Phillips Dep. at 7-11, 14-21, attached to Kobelt Decl, exh. 4, dkt. #12.  Further, defendant adduces no evidence that Killian even *knew* whether plaintiff met the standard it is advancing now.  Defendant does not say that Killian ever asked plaintiff whether his

14

former employers were parties to one of defendant's collective bargaining agreements or that Killian investigated this for himself.  Defendant cannot rely on an alleged deficiency that it never considered itself.  Balderston v. Fairbanks Morse Engine Division of Coltec Industries, 328 F.3d 309, 323 (7th Cir. 2003).

In the end, defendant's entire argument about plaintiff's alleged lack of qualifications may be a red herring.  Defendant told plaintiff that he was being denied membership because *work* was lacking, not because plaintiff was not qualified.  By Killian's own admission, he did not discover that plaintiff had failed to complete his apprenticeship until *after* defendant removed plaintiff from the referral list.  Thus, any attempt by defendant to distinguish plaintiff from other accepted applicants on that ground is not credible.

Defendant's other argument is that the 19 white males were not similarly situated to plaintiff because defendant "was engaged in active organizing drives with each of these individual's employers and [it] persuaded them to join Local 159 as part of that drive." Dft.'s PFOF ¶ 61, dkt. #11.  Again, defendant's sole support for this explanation is Killian's own declaration.  Defendant does not cite any corroborating evidence in its proposed findings of fact tending to show that defendant was engaged in organizing drives with the employers of the 19 white males at the time or that even one of the 19 white males was recruited as part of that organizing drive. Dunn v. Nordstrom, Inc., 260 F.3d 778, 785-86 (7th Cir. 2001) (calling into question nondiscriminatory reason provided by employer when

only evidence for it was testimonial). Its explanation is so vague that it likely violates the requirement of Fed. R. Civ. P. 56 for a party to set forth "specific facts" that support its position.  Drake v. Minnesota Mining & Manufacturing Co., 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.")   See also Gillie-Harp v. Cardinal Health, Inc., 249 F. Supp. 2d 1113, 1122-23 (W.D. Wis. 2003) (in employment discrimination case, disregarding one of defendant's explanations for firing plaintiff because it was so vague that plaintiff could not contradict it).  In any event, because defendant adduces no evidence that is contemporaneous to its decisions, a jury would be entitled to conclude that defendant's post hoc justification is a pretext to cover up its true discriminatory motive.  Fischer v. Avanade, Inc., 519 F.3d 393, 407 (7th Cir. 2008) ("[T]his late justification for why Fischer would not have been hired, provided at the eleventh hour in conjunction with Defendant's motion for summary judgment, raises a genuine issue of material fact as to whether this justification is a later fabrication on Defendant's part.")

Defendant attempts to counter the inference that may be drawn from the differential treatment between plaintiff and the 19 white males by pointing to two white males who had to wait longer than plaintiff to gain membership and four African Americans who were admitted to the union between 2004 and 2006.  However, it is simply not persuasive to rely

16

on the shorter amount of time that plaintiff had to wait because defendant did not make an offer to plaintiff until immediately after the Madison Equal Rights Commission concluded that plaintiff's discrimination claim against defendant was supported by probable cause. Although the evidentiary rule against using subsequent remedial measures to support a claim may bar plaintiff from relying on defendant's suspicious timing, Lust v. Sealy, 383 F.3d 580, 585 (7th Cir. 2004), this does not mean that defendant can use its offer to support an inference of nondiscrimination.

With respect to the four African Americans, three of them may not be similarly situated to plaintiff because they were not Journeymen Inside Wiremen as plaintiff was. Defendant cannot simply point to any other African American union member as proof that plaintiff was not subject to discrimination.  Defendant identifies only one Inside Journeyman Wireman that it accepted into the union (Monica Newell), but even this member is called into question by Killian's own deposition, who testified that Newell "never completed" the admission process because she did not pay the fee or sign the book.   Killian Dep. at 59-60, attached to Kennelly Aff., exh. B, dkt. #26.

In any event, the Supreme Court has held that judgment as a matter of law is not appropriate simply because the employer can identify *some* individuals outside the plaintiff's group who received similar treatment or individuals inside the plaintiff's group who received better treatment.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 153 (2000).

17

Such evidence is "relevant, [but] certainly not dispositive." Id.  If defendant allowed *no* minorities into its union, it would be subject to a class action lawsuit rather than just an individual claim.

### B.  Evidence of Pretext

Another factor that supports plaintiff's claim is defendant's shifting explanations for its actions. Firestine v. Parkview Health System, Inc., 388 F.3d 229, 236 (7th Cir. 2004) (pretext may be shown by "an inconsistent story" during litigation).  Defendant has trouble staying consistent even in the context of its own proposed findings of fact.  For example, the parties agree that Killian required plaintiff to take the exam *because* he could not confirm that plaintiff had completed an apprenticeship. Dft.'s PFOF ¶ 23, dkt. #11; Plt.'s Resp. to Dft.'s PFOF ¶ 23, dkt. #19.  However, defendant later says that Killian allowed plaintiff to take the exam only because Killian assumed that plaintiff *had* completed his apprenticeship. Id. at ¶ 24.  This not only contradicts defendant's earlier proposed fact, but makes no sense because the parties agree that the exam is a *substitute* for the apprenticeship.  If Killian had truly believed that plaintiff had completed the apprenticeship, there would have been no need for plaintiff to take the exam at all.

Defendant undermines its own case even further by saying that "another reason" Killian allowed plaintiff to take the exam was that "Santiago Rosas, a Hispanic Director of

18

the Construction labor-Management committee, gave Phillips a positive recommendation." Dft.'s PFOF ¶ 25, dkt. #11. This suggests that defendant could consider plaintiff for union membership even without an apprenticeship or particular amount of experience, contrary to other facts it has proposed.

Finally, defendant says that Killian believed that plaintiff was qualified to sign the Group IV book, Dft.'s PFOF ¶41, dkt. #11, but it fails to explain why Killian held this belief. Defendant's (unsupported) position appears to be that 2 1/2 years of plaintiff's experience may have been "in the trade," id. at ¶ 42, but again, defendant adduces no evidence that Killian held that belief at the time. Further, even if Killian believed that plaintiff was qualified to sign the Group IV book, this raises the question why he did not allow plaintiff to sign that book instead of the Group I book.

Even if defendant's explanations are considered in isolation without regard to their inconsistencies, plaintiff has raised a genuine dispute regarding their veracity. Defendant's stated reason that plaintiff was denied membership because work was slow is called into question not only by the various white members that defendant accepted, but for several other reasons as well. First is plaintiff's evidence that defendant rarely denied membership to an applicant for lack of work or removed someone after he signed the Group I book. Rudin v. Lincoln Land Community College, 420 F.3d 712, 727 (7th Cir. 2005) (pretext may be shown if defendant's actions are departure from general practices); National Labor

19

Relations Board v. Chelby Memorial Hospital Association, 1 F.3d 550, 562-63 (7th Cir.1993) (same). Defendant says it refunded one other person's union dues "for lack of work," but it does not identify the race of this person, so that fact is not probative one way or the other.  The unusual nature of this practice is further supported by testimony from Susan Blue, a senior office staff member for defendant, who says that defendant did not have a "to hire" list, contrary to what Killian told plaintiff, and the language from the union's constitution, which suggests that defendant had no authority to defer a decision on membership to a qualifying candidate.

The "no work" justification is made even less plausible by Killian's apparent ignorance of it.  If work was so slow that new members were not being accepted, why didn't Killian raise this issue with plaintiff before he took the exam?  Finally, if lack of work was the real reason for defendant's decision, why did it wait a month to inform plaintiff?  Ajayi v. Aramark Business Services, Inc., 336 F.3d 520, 534 (7th Cir. 2003) (pretext shown by defendants' failure to inform plaintiff of problem later cited as basis for adverse action). Rather than tell plaintiff immediately that his membership was being deferred, Killian decided to conduct an investigation into plaintiff's apprenticeship.  Defendant does not provide an explanation for its decision to remain silent or its decision to investigate plaintiff's history.  This may support a view that defendant was trying to concoct an ostensibly legitimate reason for justifying what it knew to be an illegal decision.

20

With respect to defendant's asserted belief that plaintiff lied about his apprenticeship, plaintiff denies that he represented or implied to Killian that he had completed the program. Even if I assume that plaintiff misled Killian, this does not explain why Killian continued to tell plaintiff that the problem was a lack of work rather than plaintiff's alleged dishonesty. If defendant believed that plaintiff had disqualified himself by lying, why did it continue the charade by telling him that work might be available in the future?  (And why would it later offer work to plaintiff?)  Forrester v. Rauland-Borg Corp., 453 F.3d 416, 417-18 (7th Cir. 2006) (pretext may be shown by evidence that stated reason did not actually influence defendant's decision, even if reason has basis in fact).

Defendant is free to try to explain its actions more coherently at trial, but on the current record, a reasonable jury could find that its articulated reasons for denying membership to plaintiff are pretexts for discrimination.

## C.  Ambiguous Statements

Finally, plaintiff points to the statements by defendant's business manager, referring to plaintiff on multiple occasions as "that black guy who used to work for the state."  By themselves, those statements would not be sufficient to support plaintiff's claim.  After all, referring to plaintiff as "black" is not pejorative, only descriptive.  Cf. Petts v. Rockledge Furniture LLC, 534 F.3d 715, 722 (7th Cir. 2008)("There is nothing inherently

21

discriminatory about referring to a woman as a 'mother.'").  However, it is unlikely that the business manager would have referred to someone else as "that *white* guy who used to work for the state," suggesting that the plaintiff's race was a salient factor to the manager. Although different inferences could be drawn from the manager's statements, a jury could find that they have some probative value in determining defendant's intent.  Duncan v. Fleetwood Motor Homes of Indiana, Inc., 518 F.3d 486, 493 (7th Cir. 2008) ("[F]inding meaning in ambiguous statements is the province of the jury.")


ORDER

IT IS ORDERED that defendant's motion for summary judgment, dkt. # 9, is DENIED, and plaintiff Alexander Phillips's motion to strike, dkt. #13, and motion for leave to file a surreply brief, dkt. #32, are DENIED as unnecessary.


Entered this 30th day of December, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge


22